UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALEXIS SOTO FERNANDEZ,

    Plaintiff,

v.                                      Case No: 2:16-cv-841-FtM-38MRM

TREES, INC.,

    Defendant.
_____/

# OPINION AND ORDER[1]

This matter comes before the Court on Defendant Trees, Inc.'s Motion for Summary Judgment (Doc. 56) filed on March 5, 2018. Plaintiff Alexis Soto Fernandez filed a Response in Opposition to Trees' Motion for Summary Judgment (Doc. 59) on March 19, 2018. After the Court granted leave to both parties, Trees filed a Reply to Fernandez's Response in Opposition (Doc. 68) on April 9, 2018, and Fernandez filed a Sur-Reply (Doc. 72) on April 16, 2018. This matter is now ripe for review.

## BACKGROUND

This is an employment discrimination and harassment suit based on Fernandez's Cuban national origin. (Doc. 1). Trees hired Fernandez as a crew foreperson at its tree trimming company from July 2015 to September 2016. (Docs. 56 at 3; 59 at 2). He was

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

responsible for leading a small crew, clearing debris, and operating machinery. (Docs. 56 at 3; 59 at 2). Trees is partly managed by general foreperson, Joseph Soto, and his son, Adam Soto. (Docs. 56 at 4; 59 at 2). Adam Soto was Fernandez's direct supervisor. (Docs. 56 at 4; 59 at 2). Although disputed, Fernandez asserts that Joseph Soto and Adam Soto both decided his regular and overtime shifts. (Doc. 59 at 5). Fernandez maintains, but Trees denies, that he was guaranteed twenty hours of overtime each week. (Doc. 57-1 at 33:18-24).[2]

The claims driving this suit occurred during a two-month period. (Docs. 56 at 4; 59 at 2; 57-1 at 64:10-25; 65:1-25; 66:1-7). Fernandez's work life at Trees was uneventful until a physical fight broke out between Adam Soto and another Cuban during his last month of employment. (Docs. 56 at 4; 59 at 2; 57-1 at 66:14-20). Fernandez alleges that after the fight, Adam Soto showed hostility towards Cuban employees like him and made derogatory comments such as "fucking Cubans," "shitty Cubans," and "new policy in the company[:] no more Cuban people[.]" (Docs. 56 at 5; 59 at 2-3; 57-1 at 65:8-16). Adam Soto also allegedly pressured Fernandez to complete unrealistic work goals with old tools and mocked him if he complained. (Doc. 59-1 at ¶ 17).

Trees offers a different narrative. It denies that Adam Soto showed hostility toward Cuban employees. (Doc. 59 at 26-27). And it maintains that Fernandez had a history of poor work performance. (Docs. 56 at 23; 57-5 at 3-4). This poor performance included Fernandez crashing his work truck and sitting/sleeping on the job. (Docs. 56 at 23; 57-5 at 3-4). As a result, Trees maintains that Joseph Soto told Fernandez that he would no

---

[2] Fernandez's deposition CM/ECF filing number is Doc. 57-1.

longer receive overtime. (Docs. 56 at 24-25; 57-5 at 4). Fernandez denies these accusations. (Doc. 57-1 at 96:16-22).

Nonetheless, the parties agree on a pivotal incident in August 2016: Fernandez's suicide attempt. (Docs. 56 at 9; 59 at 6). While on work property and during work hours, Fernandez doused himself in gasoline and reached for his lighter. (Docs. 56 at 9; 59 at 6). A fellow co-worker thwarted Fernandez's suicide attempt by tackling him and removing the lighter from his hand before he ignited it. (Docs. 56 at 9; 59 at 6). Although it is disputed whether Fernandez returned to work after his suicide attempt (Docs. 56 at 10; 59 at 6), there is no dispute that Fernandez ultimately resigned from Trees to work for another tree trimming company. (Docs. 56 at 10-11; 59 at 6). Trees maintains it fired Fernandez because of his suicide attempt that endangered himself and his coworkers. (Doc. 56 at 19).

Fernandez sues Trees for hostile work environment and national origin discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act ("FCRA"). (Doc. 1). Trees now moves for summary judgment (Doc. 56) on both claims.[3] For the reasons set forth below, Trees' Motion is granted.

## STANDARD OF REVIEW

Summary judgment is proper only if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light

---

[3] Although Fernandez does not plead separate counts for hostile work environment and national origin discrimination in the Complaint, Trees argues each theory in its motion for summary judgment, and the Court will address both as well.

most favorable to the nonmoving party.  See *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999) (citation omitted).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  See *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001).  When opposing a motion for summary judgment, the nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials and "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted).  Failure to show sufficient evidence of any essential element is fatal to the claim and the court should grant summary judgment.  See *Celotex*, 477 U.S. at 322-23.

## DISCUSSION

**A.  Hostile Work Environment**

Fernandez claims he suffered harassment in a hostile work environment in violation of Title VII and the FCRA.[4]  (Doc. 1 at 4, 6).  A hostile work environment claim requires proof of a workplace "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the terms of the victim's employment

---

[4] Fernandez's state law claims do not require a separate discussion because the FCRA is modeled after Title VII and the same framework is used to analyze these claims. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010) ("Because the FCRA is modeled after Title VII, claims brought under it are analyzed under the same framework . . . the state-law claims do not need separate discussion and their outcome is the same as the federal ones.") (internal and other citations omitted).

and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted). To establish such a claim, a plaintiff must show:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (citation omitted). Only the fourth element is at issue here because Trees argues that Adam Soto's conduct was neither severe nor pervasive. (Doc. 56 at 13).

The requirement that harassment be "severe or pervasive to alter the terms or conditions of employment" contains both a subjective and an objective component. *Harris*, 510 U.S. at 21-22. "Thus, to be actionable, this [harassing] behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] . . . to be abusive." *Miller*, 277 F.3d at 1276 (citing *Harris*, 510 U.S. at 21-22) (internal quotations marks omitted).

In evaluating the severity or pervasiveness of harassment, the court looks at the totality of the circumstances and considers the following factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* (citing *Allen v. Tyson Foods*, 121 F.3d 642, 6576 (11th Cir. 1997); *Harris*, 510 U.S. at 23)). Here, Trees does not dispute

5

Fernandez's subjective belief, but it maintains that a reasonable person would not have perceived his work environment to be severe or pervasive. The Court turns next to the factors and finds that Fernandez has fallen short of showing the objective component of his hostile work environment claim.

Although there is no "magic number" to establish frequency of harassing conduct, "it is repeated incidents of verbal harassment that continue despite the employee's objections that are indicative of a hostile work environment." *Id.* (citation omitted). An "employee must present concrete evidence in the form of specific facts, not just conclusory allegations and assertions." *Godoy v. Habersham Cty.*, 211 F. App'x 850, 854 (11th Cir. 2006) (citation omitted). The crux of Fernandez's claim is that Adam Soto consistently made comments about Cubans, but he has failed to provide evidence indicating these comments were made frequently. (Doc. 1 at 3, 6). During his deposition, Fernandez testified that Adam Soto said "shitty Cubans, fucking Cubans, crying, whining Cubans" and "new policy in the company[:] no more Cuban people[.]" (Doc. 57-1 at 65:9-15). He stated that Adam Soto "kept going every day, every day, Cubans, Cubans, Cubans, Cubans, Cubans[.]" (*Id.* at 65:22-23). But later in his deposition, he testified that Adam Soto's comments about Cubans occurred "like every other day or so." (*Id.* at 67:11-15). And, when pressed further, he could only recall that Adam Soto said "fucking Cubans" once in his presence, and he could not recall how many times Adam Soto said "shitty Cubans." (*Id.* at 117:8-20). When asked if "shitty Cubans" was said more than ten times, he said, "I don't know. Oh, my God." (*Id.* at 117:8-13). Although Fernandez pled that Adam Soto made derogatory comments against Cubans on a regular basis, he has

failed to recall more than one or two specific instances of derogatory insults.[5] "While [Adam Soto's] conduct is improper and is not to be condoned even if it occurred only once, isolated remarks alone are not sufficient to create a severe and pervasive work environment." *Cazeau v. Wells Fargo Bank, N.A.*, 614 F. App'x 972, 979 (11th Cir. 2016); *see also Alexander v. Opelika City Sch.*, 325 F. App'x 390, 393 (11th Cir. 2009) (finding harassment to be infrequent when plaintiff "testified that he was called 'boy' constantly, but then could only recall eight specific instances over the course of two years[.]").

Next, Trees argues that Adam Soto's alleged comments were offense at best, but not severe. (Doc. 56 at 16). The Court agrees. To avoid this outcome, Fernandez maintains that Adam Soto's behavior is factually analogous to the severe conduct in *Miller*, 277 F.3d 1269 and *Perez v. Pavex Corp.*, No. 8:01-CV-69-T-27MSS, 2008 WL 348803 (M.D. Fla. Feb. 7, 2008). (Doc. 59 at 20-22). But, Fernandez overlooks that those cases involved facts with elements of frequency and severity. *See Miller*, 277 F.3d at 1276 (finding severe or pervasive harassment where co-workers hurled racial insults at plaintiff "three to four times a day" in an intimidating manner); *Perez*, 2008 WL 348803, *9 (finding the employee established a hostile work environment when he identified specific racial insults that occurred "all the time" and made it impossible for him to work). Here, the record shows that Adam Soto's conduct does not rise to the level of frequency and severity found in *Miller* and *Perez*. And the Eleventh Circuit has rejected hostile work

---

[5] Fernandez points to the depositions of his co-workers, Carlos Rodriguez Perez and Marcel Hernandez to show that Adam Soto harassed Cuban workers daily. (Doc. 59 at 13). Perez testified that he heard Adam Soto say "fucking Cubans" "several" and "various" times. (Doc. 57-2 at 38:9-24). And Hernandez testified Adam Soto said "whiny Cubans" two or three times; "shit Cuban" several times (but only in 2017); and "lazy Cubans," at most, two to three times. (Doc. 57-3 at 33:25, 34:1-25, 41:9-18, 83:8-11). But neither Perez nor Hernandez could pinpoint specific instances of the comments.

environment claims under circumstances with more egregious facts than presented here. *See, e.g.*, *Godoy*, 211 F. App'x at 853-54 (finding no hostile work environment where the plaintiff endured racial slurs nearly every day and his supervisor battered him and told him "to go back to his boat and sail to South America where he belongs"); *Barrow v. Ga. Pac. Corp.*, 144 F. App'x 54, 57 (11th Cir. 2005) (finding no hostile work environment where the plaintiff's supervisor threatened to "kick [his] black ass," co-workers displayed the Confederate flag, the bathroom contained KKK graffiti, a noose was found in a locker, and supervisors called plaintiff "nigger," "black boy," and "dumb ass."). The severity factor thus weighs against Fernandez.

Fernandez asserts that Adam Soto's conduct was both physically threatening and humiliating. (Doc. 59 at 23-24). The Eleventh Circuit has already found that such comments, while offensive and unacceptable, do not amount to humiliation. *See Dominguez v. Lake Como Club*, 520 F. App'x 937, 939-40 (11th Cir. 2013) (finding comments, such as, "I hate fuckin' Cubans" and "well we don't have any Mexicans working here[,] but we got the next best thing, a Cuban" merely offensive).

Fernandez also claims that he was physically threatened when Adam Soto pressured him to complete work tasks in unrealistic timespans with inadequate tools. (*Id.* at 23). But, Fernandez has adduced no evidence to even suggest that only Cuban employees suffered such workplace conditions. Nor has Fernandez provided any evidence that he was physically threatened like the plaintiff in *Jones v. UPS Ground Freight*, who was confronted at night by two yardmen one of whom held a weapon-like object. *See Jones*, 683 F.3d 1283, 1301-02 (11th Cir. 2012).

Finally, Fernandez has not produced any evidence that Adam Soto's comments and conduct unreasonably interfered in his job performance. At best, Fernandez argues that Adam Soto's conduct caused him emotional distress and depression and led him to attempt suicide. (*Id.* at 25). Additionally, he claims that Adam Soto equipped him with inadequate tools to perform his job and would insult him if he complained. (*Id.*). While the alleged comments may have unnerved Fernandez, there is no evidence that they prevented him from doing his job. Rather, his most probative claim is that he was provided inadequate work tools. (*Id.*). But, there is no evidence to indicate that these tools unreasonably interfered in Fernandez's work. Nor is there any evidence that only Cuban employees received such tools.

When considering the totality of the circumstances, Fernandez's working conditions may have been disagreeable to him, but it was not an environment that a reasonable person would have found hostile or abusive. *See Cazeau*, 614 F. App'x at 979 ("Based on this record, and without additional evidence of the frequency or severity of the conduct, including whether it interfered with [plaintiff's] work performance, a reasonable jury could not have concluded that [plaintiff] suffered severe and pervasive harassment on the basis of his national origin.") At bottom, Fernandez has not established an objectively hostile work environment. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998) (stating that Title VII is not a "general civility code"). The Court thus grants Trees' motion for summary judgment on Fernandez's hostile work environment claim.

**B. National Original Discrimination**

Fernandez also claims that Trees denied him overtime hours and fired him because of his Cuban nationality. (*Id.* at 26-27). Title VII makes it unlawful for any employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a)(1). To prove unlawful employment discrimination, a plaintiff may present "direct evidence, circumstantial evidence, or statistical proof." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008). To overcome summary judgment, Fernandez's sole argument is that direct evidence supports his discrimination claim. (*Id.* at 27-33). This direct evidence is Adam Soto's one-time remark that there was a "new policy in the company[:] no more Cuban people." (Docs. 59 at 27; 57-1 at 65:11-16). Trees responds that Adam Soto's comment is not direct evidence because there is no link between his discriminatory attitude and the decisions to fire Fernandez or deny him overtime hours. (Doc. 68 at 7-10). Trees argues Fernandez has produced, at best, circumstantial evidence to trigger the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). (*Id.* at 10). The Court agrees with Trees.

"Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (citation omitted). This means that "remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *See id.* The biased remark must correlate the discriminatory belief to the adverse employment action. *See, e.g., Damon v. Fleming Supermarkets of Fla., Inc.,*

196 F.3d 1354, 1358 (11th Cir. 1999) (citations omitted) (stating the decision maker's comment that "what the company needed was aggressive young men" still required an inference that his belief motivated him to fire the plaintiff); *Harris v. Shelby Cty. Bd. of Educ.*, 99 F.3d 1078, 1082, n.2 (11th Cir. 1996) (stating the decision maker's comment that "under the circumstances we did not need to employ a black at Thompson High School" was not direct evidence because it still required an inference to determine intent); *Ritchie v. Indus. Steel, Inc.*, 426 F. App'x 867, 871-72 (11th Cir. 2011) (stating the decision maker's references to the plaintiff as an "old man" were not direct evidence because they were unrelated to the termination decision). Comments falling short of this standard are circumstantial evidence. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004).

Here, there is no correlation between Adam Soto's comment and the alleged denial of overtime hours and discharge. Although Adam Soto's comment may be probative of his state of mind, it still requires the Court to infer that his belief motivated him to deny Fernandez overtime hours and fire him. This is not a direct evidence case.

Lacking direct evidence, the Court must analyze Fernandez's disparate treatment claims under the *McDonnell Douglas* burden-shifting framework. *See Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997). Under this framework, the plaintiff must first establish a *prima facie* case of discrimination by showing that (1) he is a member of a protected class; (2) he was qualified to do the job; (3) he was subject to an adverse employment action; and (4) similarly situated employees outside of his protected class were treated more favorably. *See McDonnell Douglas*, 411 U.S. at 802; *see also Alvarez*, 610 F.3d at 1264. "Although a plaintiff's burden in proving a *prima facie* case is light,

summary judgment against the plaintiff is appropriate if he fails to satisfy any one of the elements of a *prima facie* case." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432-33 (11th Cir. 1998) (internal citations omitted). If, however, a plaintiff can establish a *prima facie* case, a rebuttable presumption arises that the defendant has acted unlawfully*. See Alvarez*, 610 F.3d at 1264 (citations omitted).

The defendant can rebut the presumption by articulating a legitimate, non-discriminatory reason for its action. *See Alvarez,* 610 F.3d at 1264 (citations omitted). If the defendant does so, the burden shifts back to the plaintiff to produce evidence that its proffered reason is a pretext for discrimination. *See id.* (citations omitted). "To show pretext, a plaintiff must come forward with evidence . . . sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (internal quotation omitted). A proffered reason "cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 514 (1993). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it[.]" *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (citation omitted).

More importantly, throughout the burden shifting, the plaintiff holds the ultimate burden of persuasion to show that the defendant intentionally discriminated against him. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *EEOC v. Joe's Stone Crabs*, 296 F.3d 1265, 1273 (11th Cir. 2002). With these principles in mind, the

Court will address Fernandez's national origin discrimination claim starting with his discharge.

*1. Discharge*

Fernandez asserts that Trees fired him because of his Cuban nationality. (Doc. 1 at 4; 6). Trees responds that Fernandez's *prima facie* case fails because he cannot identify a comparator – *i.e.*, a similarly situated, non-Cuban employee treated more favorably. (Doc. 56 at 20-21). The Court agrees with Trees.

"To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." *Holifield*, 115 F.3d at 1562 (citations omitted). In making this showing, "it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Id.* (citations omitted). The Eleventh Circuit requires "the comparator's misconduct [to] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir. 1999). "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *See id.* (citation omitted).

Here, Fernandez was so focused on direct evidence supporting his discrimination claim that he failed to identify a single comparator. Without a comparator, he cannot establish a *prima facie* case. In any event, the record lacks any suggestion that a non-Cuban employee who attempted suicide by fire during work hours was treated more favorably than Fernandez. As such, he cannot establish a *prima facie* case based on his discharge (constructive or otherwise).

Even if Fernandez could establish a *prima facie* case, he fails the rest of the *McDonnell Douglas* analysis. Trees offers a legitimate, non-discriminatory reason for firing Fernandez – he doused himself with gasoline and attempted to light himself on fire, which endangered himself and his coworkers. (*Id.* at 19). It goes without saying that his reckless (and undisputed) suicide attempt posed a grave danger to warrant his termination. The burden shifted back to Fernandez to produce evidence that Trees' legitimate, non-discriminatory reason for firing him was a pretext for national origin discrimination. He fails to adduce such evidence. The Court thus grants Trees' motion for summary judgment on Fernandez's claim that it unlawfully fired him because of his national origin.

*2. Denial of Overtime Hours*

Next, Fernandez asserts that Trees violated Title VII by denying him overtime because of his Cuban nationality. (Doc. 59 at 26-27). Trees responds that Fernandez cannot establish a *prima facie* case of discrimination because (1) denying him overtime is not an adverse action; and (2) Fernandez failed to identify a similarly situated, non-Cuban employee it treated more favorably than him. (Doc. 56 at 22-23). Alternatively, Trees argues that it had a legitimate, non-discriminatory reason for denying him overtime hours – Fernandez caused damage to his work truck and was caught sitting/sleeping on the job – and Fernandez cannot show this reason is pretext. (*Id.* at 24-25).

The week of August 20, 2016, is the only workweek that Fernandez can argue that Adam Soto denied him overtime hours based on his national origin.[6] Trees argues that

---

[6] Fernandez asserts that Trees denied him overtime hours during seven workweeks in 2016: January 2, February 20, March 26, April 9, June 4, August 20, and August 27. (Doc. 72 at 2). But, because Fernandez alleges that Adam Soto discriminated against

14

Fernandez cannot meet his *prima facie* burden because the denial of overtime hours is not an adverse employment action. This is because, according to Trees, the company never guaranteed overtime and Joseph Soto, not Adam Soto, decided weekend shifts. (Doc. 56 at 22-23). Fernandez responds that he was guaranteed twenty hours of overtime each week, Adam Soto made overtime decisions, and the lack of compensation affected his pay. (Doc. 59 at 26-27).

"[T]o prove adverse employment . . . an employee must show a serious and material change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001). And denying an employee the ability to earn overtime is an adverse employment action. *See Bass v. Bd. of Cty. Comm'rs, Orange Cty., Fla.*, 256 F.3d 1095, 1118 (11th Cir. 2001) (overruled on other grounds). Here, Fernandez has provided some evidence that he was entitled to overtime hours. (Docs. 57-1 at 33:18-24; 57-3 at 61:22-25, 62:1-25). Viewing this evidence in the light most favorable to Fernandez, the failure to award him overtime during the week of August 20, 2016, was an adverse employment action. But Fernandez still cannot establish a *prima facie* case of national origin discrimination because he has failed to identify a single comparator who was involved in nearly identical conduct and disciplined differently. (Doc. 56 at 23).

Even if he established a *prima facie* case, his claim does not survive the remainder of the *McDonnell Douglas* analysis. Trees asserts, and provides testimony to support,

---

him between July 2016 and September 2016, any time before July 2016 is irrelevant. (Doc. 1 at 3). Also, after Fernandez's attempted suicide on August 26, 2016, he was fired and could not earn overtime after this date. (Docs. 56 at 9-10; 59 at 6). This leaves August 20 as the only workweek in question.

that Fernandez was denied overtime because he caused damage to his work truck and was found sitting/sleeping on the job. (Docs. 56 at 23; 57-5 at 3-4). Although Fernandez denied these allegations, he admitted that Joseph Soto reprimanded him for sitting on the job. (Doc. 57-1 at 96:16-22; 99:25; 100:1-25). Even so, Fernandez has not provided any evidence to show his poor performance was a smokescreen for the true reason Trees denied him overtime hours – his national origin. See *Hurlbert*, 439 F.3d at 1298 ("To show pretext, a plaintiff must come forward with evidence . . . sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.") (internal quotations and citations omitted). Without such a showing, a reasonable jury could not conclude that he suffered national origin discrimination in violation of Title VII. The Court thus grants Trees' motion for summary judgment on Fernandez's claim that it unlawfully denied him overtime hours because of his national origin.

Accordingly, it is now **ORDERED:**

1. Defendant Trees, Inc.'s Motion for Summary Judgment (Doc. 56) is **GRANTED**.
2. The Complaint (Doc. 1) is **DISMISSED with prejudice**.
3. The Clerk shall enter judgment accordingly, terminate all remaining deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 1st day of May 2018.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

16